**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHERANNZETTA STAGGER,<br><br>    Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC,<br><br>    Defendant. | **Case No.:** 1:21-cv-2001<br><br>**Honorable John J. Tharp, Jr.**<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO LIMIT DISCOVERY** |

   Plaintiff, Cherannzetta Stagger ("Plaintiff" or "Ms. Stagger"), through undersigned counsel, hereby submits her Memorandum in Opposition to Defendant Experian Information Solutions, Inc.'s ("Defendant" or "Experian") Motion for Protective Order [doc. 33] ("Motion").

I. **INTRODUCTION**

Experian waited until three weeks after Ms. Stagger's deposition of Experian's corporate representative to produce documents facially responsive to multiple of Ms. Stagger's Rule 34 requests and directly relevant to both Ms. Stagger's claims and Experian's defenses. When Experian did finally produce these documents, namely the "Metric Report™" that Experian regularly maintains and purports to track the reliability of furnishers that provide consumer information to Experian, it redacted several portions thereof without any initial explanation. Further, the Metric Report™ contained numerous references to undisclosed documents, a plethora of undefined terms, and set forth procedures, the existence of which Experian's corporate representative had been ignorant at deposition.

Following the resulting discussions between counsel, in which Experian refused to provide a representative able to discuss the implications of the Metric Report™ in detail, Ms. Stagger noticed another deposition under Rule 30(b)(6). Experian filed the instant Motion shortly thereafter, asserting that Ms. Stagger's proposed deposition topics are not relevant to her case and that an additional deposition would be oppressively burdensome.

Experian's current "hardship" in being forced to participate in good faith discovery is entirely self-created. Had Experian simply produced the Metric Report™ when it was originally requested and properly prepared its corporate representative prior to her deposition (consistent with the deposition topics noticed), an additional deposition would not be needed. However, Experian chose instead to withhold relevant documents until after the conclusion of its deposition, and now requests that the Court bless such inappropriate behavior by refusing Ms. Stagger her right to depose Experian as to the meaning of the recently disclosed documents.

For the reasons set forth below, Ms. Stagger respectfully requests that the Court decline Experian's request and allow her to move forward in deposing Experian's corporate representative

1

regarding Experian's procedures for ensuring that its consumer reports are maximally accurate under the FCRA.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Ms. Stagger initiated the instant suit on April 14, 2021, alleging violations of the FCRA against Experian. *See* Complaint and Demand for Jury Trial [doc. 1] ("Complaint"). Briefly, Ms. Stagger's relevant allegations against Experian, set forth in her Complaint, are as follows:

Ms. Stagger filed for a Chapter 7 Bankruptcy on or about June 3, 2020, in the United States Bankruptcy Court for the District of Northern Illinois. Complaint, ¶ 36. She received an Order of Discharge on or about September 9, 2020. *Id.* at ¶ 37. Thereafter, Ms. Stagger was not personally liable for her dischargeable debts and her pre-petition debts had a $0 balance. *Id.* at ¶ 38.

Despite having actual knowledge of Ms. Stagger's bankruptcy discharge (as evidenced by the fact that Experian had proactively sought out information about Ms. Stagger's bankruptcy and reported the same on Ms. Stagger's credit report), and despite actual knowledge that Ms. Stagger's Opportunity Financial, LLC ("Opportunity") credit account (the "Account") had been opened prior to the filing of Ms. Stagger's bankruptcy petition, Experian inexplicably reported the Account as "Open" with an outstanding balance of $2,426. *Id.* at ¶¶ 45-49. The last time Opportunity made any updates to the Account was in May 2019, more than a year before Ms. Stagger filed for bankruptcy; it was frozen in time.

Ms. Stagger alleges that this obvious inaccuracy was the result of insufficient procedures, instituted and maintained by Experian, regarding the reporting of consumers' pre-bankruptcy credit accounts after the consumer receives a discharge in Chapter 7 bankruptcy. *Id.* at ¶¶ 50-57. As a result of Experian's insufficient procedures and inaccurate reporting, Plaintiff suffered actual damages, including decreased access to credit, increased debt-to-income ratio, less favorable credit

terms, emotional and mental distress, frustration, humiliation, anxiety, and harm to her reputation. *Id.*, ¶¶ 58-60. This well-deserved lawsuit followed.

On or about June 14, 2021, Ms. Stagger propounded upon Experian her first set of requests for production of documents pursuant to Fed. R. Civ. P. 34. *See* doc. 25-3 ("Plaintiff's RFP"). On or about July 14, 2021, Experian responded to Ms. Stagger's requests. *See* doc. 25-4 ("Experian's Initial Responses"). Experian's responses indicated that it was refusing to provide several documents relevant to Plaintiff's case. *Id.*

On August 24, 2021, the undersigned met and conferred with Experian's counsel via Zoom regarding Experian's insufficient responses. *See* doc. 25-5 at STAGGER_MTC_000039-43. In that call, Experian's counsel claimed that she could not produce the Opportunity Financial Metric Report™ because it "did not exist" and it would require a complex, highly manual process that would take weeks, to create the Report. *See* Declaration of Dawn M. McCraw ("McCraw Decl."), ¶ 2. It turns out this was false. *Id*. On August 26, 2021, Plaintiff took the deposition of Experian's Rule 30(b)(6) corporate representative, Ms. Cymone Rogers ("Ms. Rogers"). *See* McCraw Decl., ¶ 3 – Exhibit A ("Rogers Deposition"). In that deposition, after Experian's counsel again claimed Experian did not have a Metric Report™ in its possession[1], the undersigned showed Experian's witness a transcript from a motion to compel hearing in another matter where Experian made it clear that the Metric Report™ is an automated report provided to all furnishers on a monthly basis. *Id*.,115:2-18, 116:10-23. Experian finally served its amended responses to Plaintiff's document requests on or about September 15, 2021 (*See* doc. 25-6 ("Experian's Amended Responses")) which, for the first time, included disclosure of Experian's maintained Metric Report™ for

---

[1] *Id.*, at 113:6-17 (Experian had also responded to Plaintiff's request for any documents about reliability data for Opportunity Financial, that Experian "is not aware of any documents responsive to this request."

Opportunity Financial, the furnisher at issue in this case (McCraw Decl., ¶ 4 – Exhibit B ("Metric Report™").

It quickly became apparent that the Metric Report™ was incomplete as produced, containing numerous pages that were completely redacted with no explanation. *Id.*, Exp_Stagger_506-511, 520-525, 534-537, 543-547, 553-557, 563-566, 579-583. This was mentioned to Experian's counsel while the parties were preparing their joint status report on September 20, 2021. McCraw Decl., ¶ 5 – Exhibit C ("Email Communications"), pg. 18. Experian's counsel informed Plaintiff's counsel that the redacted information included only "account numbers." *Id.* Plaintiff's counsel noted that a protective order was already in place in the case, and therefore there was no need for such redaction. *Id.*, at 17-18. However, Plaintiff's counsel offered to accept Experian's explanation if Experian would provide a declaration that only account numbers had been redacted and what the undersigned believed (without benefit of a deposition) were facts about the Metric Report™. *Id.*, at 16. After considering the issue for **two weeks** of back-and-forth discussions of the declaration content, Experian's counsel informed Plaintiff's counsel that Experian was refusing to provide such a declaration. *Id.*, at 9-16.

During the two weeks Experian took to decide not to provide a declaration, the undersigned reviewed the Metric Report™ carefully, and realized that the same raised multiple, complex questions pertaining to Experian's procedures for ensuring that furnishers from which it accepts information are reliable. *Id.*, at 13. After being notified of Experian's refusal to provide the declaration, the undersigned requested availability Experian's corporate representative for an additional deposition pertaining to the new information that had been withheld by Experian until after the first deposition. *Id.*, at 8-9. Experian's counsel failed to respond. *Id.*, at 7-8.

After the undersigned followed up three days later, Experian's counsel finally responded to indicate that Experian's representative was "unavailable for the indefinite future" and that

4

Experian was "working on identifying another appropriate witness for a potential deposition." *Id.*, at 7. Four days later, Experian's counsel informed the undersigned that Experian would not be producing a representative for deposition." *Id.*, at 6.

On October 19, 2021, the undersigned served upon Experian's counsel Plaintiff's notice of taking Experian's second deposition regarding its procedures for ensuring the reliability of furnishers generally and the Metric Report™ specifically. *Id.*, at 1-4.

Experian filed its instant Motion on November 5, 2021.

### III. LEGAL STANDARD

"Federal Rule of Civil Procedure 26(c)(1) allows a court to, 'for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…'" *Global Material Techs., Inc. v. Dazheng Metal Fibre, Ltd.*, 133 F. Supp. 3d 1079, 1083 (N.D. Ill. 2015) (quoting Fed. R. Civ. P. 26(c)(1)).

The party seeking the protective order must show good cause by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *EEOC v. Source One Staffing, Inc.*, No. 11 C 6754, 2013 WL 25033, at *3 (N.D. Ill. Jan. 2, 2013) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

"Here, the burden is quite heavy. 'A prohibition against taking an oral deposition is a very unusual procedure and a party who seeks a protective order prohibiting such a deposition bears a heavy burden of demonstrating good cause for such an order.'" *Stanek v. St. Charles Comm. Unit Sch. Dist. # 303*, No. 13 C 3106, 2020 WL 1304828, at *3 (N.D. Ill. Mar. 19, 2020) (quoting *Armstrong v. MGC Mortg., Inc.*, No. 1:09-CV-00131, 2010 WL 3835703, at *2 (N.D.W. Va. Sept. 28, 2010)).

### IV. ARGUMENT
#### A. EXPERIAN ONCE AGAIN IMPROPERLY ANSWERS DISCOVERY REQUESTS WITH A DECLARATION

As has unfortunately become Experian's regular practice in this litigation, its instant Motion purports to simply "tell" the Court (and Plaintiff) what the Metric Report™ is, what the information therein means, and why it is (or is not) relevant to this case, and to support the same with nothing more than a declaration signed by an Experian employee. This is not appropriate. There is no approved discovery procedure under the Federal Rules that contemplates a party avoiding its duty to provide documents or testimony by simply filing a declaration.

As has been recognized throughout the federal judiciary, "[a] declaration is […] not an adequate substitute for live testimony, such as a deposition." *Cavanaugh v. Wainstein*, No. 05-123 (GK), 2007 WL 1601723, at *10 (D.D.C. June 4, 2007). "[S]uch an approach eschews the opportunity for opposing counsel to probe the veracity and contours of the statements," and "counsel propounding the […] question is denied the opportunity to ask probative follow-up questions." *Alexander v. F.B.I.*, 168 F.R.D. 113, 121 (D.D.C. 1998); *See also United States v. 3M Co. (In re 3M Combat Arms Earplug Prods. Liab. Litig.)*, No. 3:20-mc-00056-MCR-GRJ, at *10-11 (N.D. Fla. Nov. 2, 2020)[2] (Holding that the federal government's "decision to offer a declaration in lieu of a deposition is arbitrary and capricious.").

The statements made in the declaration of Teresa Iwanski purport to describe Experian's "Metrics Reports™" in detail. *See* doc. 33-2. Ms. Stagger has not been given the opportunity to examine Ms. Iwanski or any other corporate representative regarding the Metric Report™, as is her right as a litigant in an adversarial judicial system, and the inclusion of an unverifiable, unchallengeable "declaration" is not a substitute for the discovery process. The Court should disregard Ms. Iwanski's statements regarding the Metric Report™ as not established on the record until Ms. Stagger has conducted a proper deposition regarding the same.

---

[2] A copy of this unreported decision is filed concurrently herewith.

### B. MS. STAGGER'S PROPOSED DEPOSITION TOPICS ARE RELEVANT TO BOTH HER PRIMA FACIE CASE AND TO EXPERIAN'S PLEADED AFFIRMATIVE DEFENSES

The deposition notice at issue set forth the following topics:

1. Experian's Furnisher Metric Report™, the data that is captured, calculations, and the shorthand or codes used by Defendant.

2. Defendant's procedures to identify and take corrective action regarding data from furnishers whose dispute response behavior or other metrics indicate the furnisher is not a source of reliable, verifiable information about consumers. Also explain when the new CFPB tracking procedures were implemented. See STAGGER000132-133.

3. Defendant's furnisher reliability data for Opp Loans, including Experian's Furnisher Metric Report™ and Opp Loans dispute response behavior.

4. Experian's tracking of "Stale Accounts," any procedures in place to notify furnishers, and any consequences to furnishers of ceasing to update accounts or provide a finalized status. Specific Stale Accounts belonging to Opp Loans, including Plaintiff's Account, and any actions which have been taken with Opp Loans from 2 years prior to the filing of the Complaint.

5. Any consequences or requirements under your agreement(s) with Opp Loans to "ensure accurate reporting of consumer accounts/tradelines."

*See* doc. 33-12, pgs. 2-3.

Put simply, Ms. Stagger seeks deposition examination of a corporate representative with detailed knowledge of the Metric Report™ and Experian's procedure for ensuring that its furnishers are reliable. This is facially relevant to Ms. Stagger's prima facie case, as she bears the burden of proving to the jury that Experian's reporting procedures are sufficiently "reasonable" to

ensure "maximum possible accuracy." *See* § 1681e(b). Experian's procedures for vetting furnishers, its maintained tracking information about those furnishers, and the consequences imposed by Experian on known unreliable furnishers are all relevant topics of discovery.

Further, even if these topics were not relevant to Ms. Stagger's prima facie case, Experian opened the door widely when it decided to forward the defense that it was entitled to rely on Opportunity as a furnisher in the first instance. *See* doc. 30, pgs. 1-2 (Relying on *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004), as support for the proposition that Experian was entitled to rely on Opportunity's reporting).

While Experian's citation to *Sarver* in its Motion to Compel [doc. 30] was misplaced and the quote taken out of context, it nonetheless raised the fact that, in the Seventh Circuit, a CRA's knowledge regarding the reliability of a furnisher is per se relevant in a FCRA case. *See Sarver*, 390 F.3d at 972 (A CRA's reliance on a furnisher is reasonable "unless the agency receives notice of systemic problems with its procedures.").

The relevance of Experian's Metric Report™ and the underlying procedures was expressly acknowledged by Experian's own counsel in communication with the undersigned. While arguing that Experian should not be required to produce an unredacted copy of the Metric Report™, Experian's counsel stated: "Plaintiff requested the Metrics Reports™ to see the reliability of the furnisher. The Metric Reports™ reveal a low rate of furnisher error and demonstrate that Opportunity Financial is a reliable furnisher." *See* Email Communications, pg. 17. In fact, Experian produced the Metric Report™ in response to Ms. Stagger's Rule 34 request for "all documents showing reliability data" for Opportunity. *Id.*, at pg. 25.

Experian is now arguing that detailed information regarding its furnisher reliability procedures is irrelevant, after producing the Metric Report™ as *relevant* to Ms. Stagger's Rule 34

8

requests and after its counsel argued that the same "demonstrate[d] that Opportunity Financial is a reliable furnisher," is nothing more than opportunistic position-switching.

### C. MS. STAGGER'S REQUEST FOR A COMPLETE DEPOSITION IS PROPORTIONAL TO THE NEEDS OF THIS CASE

*1. Any Burden Imposed On Experian Resulting From The Completion Of Its Rule 30(b)(6) Deposition Is Entirely Self-Inflicted*

Experian describes Ms. Stagger's current position as that of seeking an additional deposition. That is inaccurate. Ms. Stagger is not seeking an "additional" deposition. Ms. Stagger is seeking to complete her original Rule 30(b)(6) deposition. Ms. Stagger's original requests for production of documents sought "all documents showing reliability data" for Opportunity. *See* doc. 33-4, ¶ 21. Experian's response to this request was that it was "not aware of any documents that are responsive to this Request." *See* doc. 33-5, ¶ 21. (It quickly became apparent at the deposition that this was false.).

Relying on the undersigned's knowledge from other cases that a document did in fact exist, contrary to Experian's discovery responses, and that the document was maintained by Experian under the name "Metric Report™," Ms. Stagger amended her Rule 30(b)(6) notice and proposed the following topics, in relevant part:

> 34. Defendant's procedures to identify and take corrective action regarding data from furnishers whose dispute response behavior or other metrics indicate the furnisher is not a source of reliable, verifiable information about consumers. See STAGGER000132-133.
>
> 35. Defendant's furnisher reliability data for Opp Loans, including Experian's Furnisher Metrics Report™ and Opp Loans dispute response behavior.
>
> 36. Any consequences or requirements under your agreement(s) with Opp Loans to ensure accurate reporting of consumer accounts/tradelines."

MsCraw Decl., ¶ 6 – Exhibit D ("Amended Notice of Deposition"). However, despite the inclusion of these clear deposition topics, Experian failed to adequately prepare its witness to testify prior to deposition, as is required by Rule 30(b)(6).

> Q. What is your understanding of what a Metrics Report is?
> A. I know that the report is to inform the data furnishers of information, but we provide the document to the data furnishers to be helpful to them. It also gives them data. That way, they can use it for how they see fit.
> Q. What data does it provide to them?
> A. I know it provides errors.
> Q. What types of errors?
> A. I'm unsure
> \*\*\*
> Q. …do you know what kind of errors you are informing them about?
> A. No, ma'am.
> Q. How often is this report provided to furnishers?
> A. I do not know.
> \*\*\*
> A. **I'm not very familiar with the Metrics Report.**

Rogers Deposition, pgs. 113:25-114:10; 114:18-22; 116:23 (emphasis added).

Ms. Rogers was self-admittedly completely unprepared to testify as to the topics noticed by Ms. Stagger. Therefore, Ms. Stagger seeks to complete her 30(b)(6) deposition of Experian, now that Ms. Stagger has a copy of the relevant Metric Report™ (not provided until 3 weeks after the end of the August deposition) regarding which she can ask specific, probing questions into Experian's procedures for ensuring furnisher reliability.[3]

This is, therefore, the crux of the parties' dispute. In order to carry its burden in requesting a protective order, Experian must show good cause by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Source One*

---

[3] As additional proof that Ms. Rogers was woefully unprepared to testify, Ms. Stagger notes that her counsel explicitly asked Ms. Rogers whether Experian maintained tracking of accounts about which a furnisher simply stops reporting. These accounts, called "Stale Accounts" in Experian's Metric Report™ and discussed more thoroughly below, are indeed tracked in Experian's Metric Report™. However, Ms. Rogers answered counsel's question in the negative. *See* Rogers Deposition, pg. 125:11-14.

*Staffing, Inc.*, 2013 WL 25033, at *3. Experian argues that good cause exists because allowing Ms. Stagger's noticed deposition would be disproportionate and burdensome. However, the entirety of Experian's proportionality argument rings hollow considering that any burden incurred by Experian in being forced to complete its deposition is entirely self-inflicted.

Had Experian been forthcoming in its original document production, and had Experian prepared its corporate representative to discuss the Metric Report™ and the procedures Experian implements to ensure furnisher reliability, Experian's current predicament would not exist. Ms. Stagger's counsel would have been able to discuss all relevant points with the representative in August, and fact discovery would be nearly complete in this case. Instead, Ms. Stagger is forced to expend resources in seeking to finish her Rule 30(b)(6) deposition to probe patently discoverable subject areas that were not made available to her until after the August deposition.[4]

Experian is essentially asking the Court to prohibit the deposition of Experian regarding its furnisher validation procedures altogether. "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). Experian has failed to set forth any "extraordinary circumstances" that would justify such a variation from the default rule that parties are entitled to full and complete discovery into relevant issues.

Even if the Court were to accept Experian's premise that Ms. Stagger is seeking an "additional" deposition instead of simply seeking to fully complete the deposition which she

---

[4] On November 9, 2021, the District of Minnesota compelled document production and Experian's participation in an additional Rule 30(b)(6) deposition on substantially similar facts to those of this case. *See Campbell v. Experian*, 0:20-cv-02498, doc. 128 (Minn. 2021). During the hearing, in which Price Law Group, APC participated, the court was less than complimentary of Experian's tactic of waiting until after the consumer-plaintiff conducts her Rule 30(b)(6) to produce relevant documents. Ms. Stagger will supplement her Exhibits to this Opposition with the transcript of the November 9, 2021, *Campbell* hearing prior to oral argument on Experian's Motion in this case.

11

noticed in August, federal courts throughout the country have determined that failure to provide relevant documents prior to a deposition is grounds for ordering an additional deposition. *See e.g. Arfa v. Zionist Org. of Am.*, No. CV 13-2942 ABC SS, 2014 WL 815496, at *9 (C.D. Cal. Mar. 3, 2014) ("If the documents are not produced for use at the deposition, [...] the Court may exercise its discretion at a later date to conclude that the delay in production is grounds for a further deposition of that witness to question the witness about such documents."); *Tbear v. Forman*, Case No.17-cv-00796-JSC, at *2 (N.D. Cal. July 18, 2018)[5] ("Plaintiff may have to later appear for a continued deposition if documents are produced after his deposition and Defendant needs to question him about them...").

Indeed, "[i]t should be obvious that [a party] has a right, as the deposing party, to question the deponent regarding any documents that he produces…" *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS-CHL, 2016 WL 3124640, at *8 (W.D. Ky. June 1, 2016) objections sustained in part and overruled in part, No. 3:14-CV-00598-CRS, 2016 WL 3748519 (W.D. Ky. July 8, 2016). Experian's feigned surprise that Ms. Stagger would like to exercise her right to depose its corporate representative about the Metric Report™ is unconvincing.

Experian has failed to show that properly preparing and producing a corporate representative to thoroughly discuss the Metric Report™ and Experian's procedures for ensuring furniture reliability would impose any undue burden on Experian that is not simply the natural cause of Experian's decision to ignore its duty under Rule 34 until after the August deposition. Experian has therefore failed to carry its burden of showing good cause as to why the Court should prohibit Ms. Stagger's noticed deposition.

> 2. *Further Deposition Questioning Is Required To Establish Experian's Policies And Procedures On The Record*

---

[5] A copy of this unreported decision is filed concurrently herewith.

While Experian's bad faith failure to provide the Metric Report™ prior to the August deposition and to properly prepare its corporate representative both independently support the denial of Experian's Motion, it should be noted that the Metric Report™ alone presents numerous areas of inquiry, directly related to Ms. Stagger's case and Experian's defenses, which have not yet been answered by Experian in discovery. A small sampling of these issues is as follows[6]:

1. A "Stale Account" is an account that Experian reports as "open […] (current or delinquent) with a balance amount greater than zero which ha[s] not been updated in more than 90 days." Experian last updated the reporting of the account at issue in May 2019 to include a balance owed of $2,426, before her June 2020 bankruptcy filing. Therefore, by the definition in the Metric Report™, the Opportunity account was a "Stale Account." This raises several issues:
2. The Metrics Report™ makes it obvious that Experian tracks accounts that have not been updated in either "91-180 days" or "[o]ver 6 months." *See* Metric Report™, Exp_Stagger_505. As Experian has this information, why is it not considered as a criterion in Experian's bankruptcy scrub procedure? Is it not important that an account has not been updated since *before* a bankruptcy was filed?
3. Further, the Metric Report™ indicates that "[a] high number of stale accounts may be an indicator of a reporting issue." *See* Metric Report™, Exp_Stagger_505. The Metric Report™ purportedly lists account numbers for the furnisher to take "Action to Correct" if there are fatal errors. Why does Experian not also list Stale Account numbers and recommend to that furnisher an "Action to Correct."
4. Every month that the Metric Report™ is automatically generated, it includes two "Stale Account" categories: "91-180 days" or "[o]ver 6 months." *See* Metric Report™, Exp_Stagger_505. It is unclear from the face of the document whether the latter category includes the first (do the 922 accounts listed as "[o]ver 6 months" on page 505 include the 93 from "91-180 days," or is it in addition?
5. Do the monthly numbers of Stale Accounts compound month over month (is each new month representative of only the new accounts that are recognized as stale during that period, or are the numbers somehow cumulative)?
6. If it is cumulative, why does Experian continue to report accounts that it knows are stale?
7. The Metrics Report™ clearly states that "data that hasn't been updated in more than 6 months could be subject to deletion from our database." See Metric Report™, Exp_Stagger_505. What does this mean? When does deletion occur? Does it ever occur? Ms. Stagger's account was stale by two years at the time her Complaint was filed, indicating that Experian does not delete accounts it knows are stale, despite the Metric Report™'s statement.
8. If Experian does not delete Stale Accounts, and does not even notify the furnisher of Stale Account numbers, what consequences does Experian impose upon furnishers of Stale Accounts? If there are no consequences, what is the purpose of the Metric

---

[6] Ms. Stagger ends the list of queries here due to page limitation. There are many more.

13

Report™? How does Experian use the tracked information to ensure "maximum possible accuracy?"

Experian attempts to explain away a number of the above questions by making statements of "fact" in its Motion and in a declaration by an Experian employee.[7] As noted previously, this is not appropriate, and the Court should fully discount any such statements. Experian is not entitled to provide a declaration in lieu of actually participating in the discovery process.

Regardless, Experian's Motion does not address all the areas of inquiry identified above or the many that were not listed. This is because it cannot. A deposition is needed to fully flesh out all the questions raised by the Metric Report™, as Experian is well aware. Requiring Ms. Stagger to present her case at trial without the full benefit of discovery, including a probing deposition into the Metric Report™ (with a **knowledgeable** witness) and Experian's furnisher reliability procedures, serves no purpose other than that of prejudice. The Court should deny Experian's Motion.

3. *Experian Is Not Entitled To Dictate Which Discovery Tools Ms. Stagger Utilizes In Prosecuting Her Case*

As a final note, Experian's suggestion that Ms. Stagger simply utilize interrogatories to gain an understanding of the Metric Report™ and the procedures that it represents is not well taken. As noted above, a deposition is preferred over the submission of written statements, which are simply "not an adequate substitute for live testimony, such as a deposition." *Cavanaugh*, 2007 WL 1601723, at *10. Depositions provide "the opportunity for opposing counsel to probe the veracity and contours of the statements," and "to ask probative follow-up questions." *Alexander*,

---

[7] Experian's attempt to paint the Metrics Report™'s relevance as limited to only the "fatal error percentage" is unconvincing. As far as Ms. Stagger can tell, a "fatal error" is merely an instance where the codes reported by the furnisher reporting are internally inconsistent or do not logically fit in the Metro 2 framework. As described above, the number of reported Stale Accounts is infinitely more relevant to a determination as to whether Experian's continued reliance on Opportunity's two-year-old reporting was reasonable and ensured "maximum possible accuracy," especially when an event such as a Chapter 7 discharge later occurred.

14

168 F.R.D. at 121. Why Ms. Stagger should be required to forego the powerful discovery tool that is a deposition in favor of requesting more untestable statements curated by Experian's counsel is unexplained in Experian's Motion.

Ms. Stagger also notes that, so far, Experian's interrogatory responses on this very topic have been woefully lacking, invariably pointing Ms. Stagger to Experian's document production (which, as is described throughout this Opposition, was itself woefully lacking until after the August deposition). *See* McCraw Decl., ¶ 7 – Exhibit E ("Interrogatory Responses"), ¶ 9. Why Ms. Stagger should be required to depend on further such evasive responses is also unexplained in Experian's Motion.

Simply put, Experian is not entitled to dictate which discovery tools Ms. Stagger employs in the prosecution of her claims, and Ms. Stagger has determined that the completion of her deposition under Rule 30(b)(6) fits her needs best.

### V.     **CONCLUSION**

The Court should not bless Experian's patently inappropriate decision to withhold relevant document production until **after** Ms. Stagger's initial deposition of Experian's corporate representative. It is not the fault of Ms. Stagger that Experian chose to prejudice her case in such a manner, and Experian's cries of "burden" and "cost" are particularly meaningless when it is remembered that such burden and cost are entirely the fault of Experian and Experian alone.

Ms. Stagger is entitled to full discovery into all areas related to her case. This includes the procurement of a complete deposition transcript wherein her attorneys are armed with all relevant documents and can ask probing follow-up questions. Experian's Motion fails to make a showing of good cause as to why the Court should prohibit such presumptively legitimate discovery. For this reason, Ms. Stagger respectfully requests that the Court deny Experian's Motion and allow her to complete her deposition of Experian's corporate representative.

RESPECTFULLY SUBMITTED: November 12, 2021

                                              By: /s/ *Dawn M. McCraw*
                                              Dawn M. McCraw (IL #035321)
                                              PRICE LAW GROUP, APC
                                              8245 N. 85th Way
                                              Scottsdale, AZ 85258
                                              T: (818) 600-5585
                                              F: (818) 600-5485
                                              E: dawn@pricelawgroup.com
                                              *Attorneys for Plaintiff,*
                                              *Cherannzetta Stagger*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on November 12, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

     /s/Jacey Gutierrez