**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHERANNZETTA STAGGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 21 C 2001** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **EXPERIAN INFORMATION SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff has filed a motion to compel the defendant, Experian, to respond to two document requests, Nos. 5 and 24. For the following reasons the motion [Dkt. #25] is granted. Experian must produce the materials at issue within 15 days.

This is a Fair Credit Reporting Act ("FCRA") case the plaintiff filed against Experian on April 14, 2021. The plaintiff filed for Chapter 7 Bankruptcy in June of 2020, and received an Order of Discharge on or about September 9, 2020. [Dkt. #1, ¶¶ 36-37]. At that point, plaintiff was not personally liable for her dischargeable debts, and her pre-petition debts had $0 balances. [Dkt. #1, ¶ 38]. Plaintiff complains that, despite having actual knowledge of her bankruptcy discharge and despite actual knowledge that plaintiff's Opportunity Financial, LLC ("Opportunity") credit account had been opened prior to the filing of her bankruptcy petition, Experian nevertheless reported the Account as "Open" with an outstanding balance owed of $2,426. [Dkt. #1, ¶¶ 45-49].

Plaintiff alleges that this obvious inaccuracy is the result of Experian's insufficient procedures regarding the reporting of consumers' pre-bankruptcy credit accounts after the consumer

receives a discharge in Chapter 7 bankruptcy. [Dkt. #1, ¶¶ 50-57]. As a result of those alleged insufficient procedures and inaccurate reporting, plaintiff claims she suffered actual damages, including decreased access to credit, less favorable credit terms, higher debt-to-income ratio, emotional and mental distress, frustration, humiliation, anxiety, and harm to her reputation. [Dkt. #1, ¶¶ 58-60].

Experian claims that it followed its usual procedure in this case. Within seven days of receiving notice from LexisNexis that a discharge has been entered in a consumer's Chapter 7 bankruptcy, it "scrubs" the consumer's file and updates all accounts that are reporting as more than 30 days late. According to Experian, it does not scrub accounts reporting in a current status. It continues to monitor the consumer's file on a regular basis for accounts that have begun to report as more than 30 days past due. If one of those comes up, Experian updates the report to show it as discharged. The idea is to catch accounts that were current at the time of discharge and have since gone delinquent. In the plaintiff's case, Experian claims it got notice of plaintiff's discharge order on September 10, 2020. Experian ran its bankruptcy scrub but, at the time, plaintiff's Opportunity account was "current", so it wasn't updated. According to Experian, because it remained "current' during monitoring, it wasn't updated and did adversely affect plaintiff's credit score. But, Experian lays the blame for that at plaintiff's doorstep because she did notify Experian the account was discharged. And, when Experian applied dispute procedures to the account once plaintiff filed suit to correct the account's status, the correction cost the plaintiff five points of credit score. [Dkt. #30, at 4-6].

But, whether any or all of the foregoing is what happened is a matter for dispositive motions or, perhaps trial. As much as the parties would like to argue their substantive cases – and have –

2

this is a discovery dispute. The idea here is to gather evidence to *show* what happened, or perhaps what *should have happened*, not to take counsel's word for it. "[U]nfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). *Accord Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018).

The plaintiff served the document requests at issue here on June 14, 2021, and Experian came back with its objections in timely fashion on July 14th. A fair amount of the parties' back and forth can be glossed over as it is clear the law firms are familiar with one another and not altogether cordial, especially given the tone taken on Experian's side. Unfortunately, familiarity does seem to breed contempt, more so in litigation and especially in discovery. But not every case, and certainly not every little discovery spat needs to be treated as if it were Napoleon's retreat from Moscow. In the case of discovery disputes, it's a highly questionable strategy because once counsel abandons their responsibilities under Local Rule 37.2 and demands court intervention, it becomes a matter committed to the broad discretion of the court. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013). Consequently, it behooves counsel to work things out on their own where possible.

Discretion denotes the absence of hard and fast rules. *Langnes v. Green*, 282 U.S. 531, 541 (1931), and being a range, not a point, discretion allows two decision-makers—on virtually identical facts—to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996); *see also McCleskey v. Kemp*, 753 F.2d 877, 891 (11th Cir. 1985), *aff'd*, *McCleskey v. Kemp*, 481 U.S. 279, 289-290, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). *Accord Mejia v. Cook County, Ill.*, 650 F.3d 631, 635 (7th Cir. 2011). *Cf. United States v. Bullion*, 466 F.3d 574,

3

577 (7th Cir. 2006)(Posner, J.)("The striking of a balance of uncertainties can rarely be deemed unreasonable...."). A party who steadfastly maintains his position without budging could be "right," but find itself on the losing side when the matter is left to the court, and the court's "discretion" leads it to accept the other side's position – which is then, by definition, the correct one. A successful appeal of the court's resolution of a discovery dispute is rare because an abuse of discretion only occurs when no reasonable person could take the view of the district court. *U.S. v. Re*, 401 F.3d 828, 832 (7th Cir. 2005). And here, after reviewing the pertinent parts of parties' submissions, is that view. Plaintiff's Request for Production No. 5 requested the following:

> For all accounts reporting at the time the complaint was filed, provide all corresponding data, including the historical 84-month data for Metro 2 fields: 16 (Actual Payment Amount), 17A (Account Status), 17B (Payment Rating), 18 (Payment History Profile), 19 (Special Comment), 21 (Current balance), 22 (Amount past due), 23 (Original Charge off amount), 24 (Date of Account Information), 25 (FCRA Compliance/Date of First Delinquency), 26 (Date Closed), and 38 (Consumer Information Indicator).

Apparently, as can best be gleaned from the parties' presentations, what was actually requested is what the parties call the "Long Admin Report." [Dkt. #25-1, at 5-6; #30, at 9-10]. It is the historical information Experian keeps of updates to a consumer's file, including up to 84-month historical updates to the consumer's Account Status, Payment Rating, and Payment History Profile. Essentially, it's a detailed, historical log of the information businesses provide to Experian about a consumer, and the only document that provides some level of a chronological overview of the information contained in the plaintiff's credit file, and how Experian used that information in its reporting.

4

As such, it certainly appears to be "relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed.R.Civ.P. 26(b)(1). And Experian seems a bit flummoxed in its efforts to get around that obvious impression. At first, it claims it has already produced "both its standard Admin Report and a Long Admin Report" [Dkt. #30, at 9] and that the Long Admin Report it produced was "Unredacted." [Dkt. #30, at 8 ("Experian Has Produced An Unredacted Long Admin Report in Compliance with Its Obligations . . . .")]. But reading a bit farther, Experian concedes that it certainly did produce a *redacted* report:

> The trade lines that Plaintiff is seeking to *unredact* are not reporting as discharged, but rather are reporting as "DELETE." Experian informed Plaintiff of this fact. That status means those accounts have been deleted from Plaintiff's credit file for credit reporting purposes and cannot be included on any consumer reports provided to a third party evaluating Plaintiff's creditworthiness.

[Dkt. #30, at 9]. It's not clear whether Experian's assertion that it has produced an "unredacted" Long Admin Report was merely a blunder, but the gist of Experian's position seems to be the report it produced was truly "unredacted" because the only things redacted don't, in Experian's view, matter. That, of course, is preposterous.

Plaintiff makes the point that these redacted entries have value in illuminating how Experian performed its "bankruptcy scrub" on her file and her accounts. That seems obvious. But Experian assures the court that it has repeatedly explained to plaintiff's counsel how its scrub works and the fact that current accounts are not included. And, Experian tells the court that its corporate representative also explained to counsel that a scrub does not delete accounts but updates its reporting of accounts to show that they are discharged in bankruptcy. [Dkt. #30, at 9]. That's all well and good, but as already mentioned, a lawsuit involves a lot more "show me" than "tell me." "Move

along, there's nothing to see here," is simply not a very convincing stance. If plaintiffs simply had to believe defendants' and their attorneys' assurances that defendants had done nothing wrong, there would be a lot of judges looking for other employment. By way of example, even expert witnesses, testifying on matters that no judge, jury, or attorney could possibly understand, still have to show their work. *Compare Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."). The court understands that there's a bit of a "pay no attention to the man behind the curtain" aspect to credit reporting agencies that Experian wants to maintain but, in many cases, that curtain has to be pulled back in litigation. That's how this works under the Rules of Civil Procedure.

Accordingly, this portion of plaintiff's motion to compel is granted and Experian must produced an unredacted version of the Long Admin Report that is *actually unredacted*, as opposed to the type of "unredacted" report it claims to have already produced.

Plaintiff's Request for Production No. 24 requested the following:

> All documents, memoranda emails, communication, manuals, guides, or other materials relating to your policy changes and implementation, including software and algorithms, as a result of the Settlement Order in *Terri N. White v. Experian Information Solutions, Inc.*, CV 05-1070 DOC (MLGx) (C.D. Cal. Complaint filed Nov. 2, 2005).

Experian responded, objecting on the grounds of attorney-client privilege and work product, and lack of relevance.

> In addition to its General Objections, Experian objects to this Request because it seeks information protected by the attorney-client privilege and work product doctrines. Experian also objects to this Request because it seeks information that is not relevant to Plaintiff's claims. While the White order established that applying

certain assumptions to accounts when a consumer obtains a Chapter 7 bankruptcy discharge, it does not detail how Experian is required to implement those assumptions. Further, Experian is liable, if at all, for its actual procedures, not for how it implemented a court order entered more than a decade ago. Based on the foregoing objections, Experian will not search for or produce documents in response to this Request.

The parties have apparently whittled this dispute down to emails and document(s) explaining Experian's post-bankruptcy reporting scrub procedures, and the changes Experian made to those procedures in early 2021. Experian does not dispute that documents pertaining to its post-bankruptcy reporting scrub procedures are relevant, but does maintain that documents pertaining to changes it made to those procedures in early 2021 are not. [Dkt. #30, at 11].

According to Experian, it updated its scrub procedures earlier this year, in March 2021, more than six months after it applied its old scrub procedures to plaintiff's credit file following her bankruptcy discharge. Experian says those changes were focused on procedures related to the updating of accounts with minor delinquencies – such as delinquencies of 30, 60, or 90 days. Experian explains that because neither of the changes to the scrub—shortening the threshold for scrubbing accounts to 30 days and executing the look–back scrub monthly—altered how the scrub treats current accounts, which is what the Opportunity account was. [Dkt. #30, at 11]. But the question this begs is apparent: if the way Experian handled plaintiff's account pre-change was reasonable or accurate or in keeping with an injunction from a federal court in California, what was the motivation for making those March 2020 changes? So, Experian's objection that the materials aren't relevant doesn't hold up.

Experian also objects on the basis of "proportionality." But, Experian made no mention of that in its objection to plaintiff's request at the time so the objection is waived. While Rule 34 does

not contain express waiver language regarding untimely objections, district courts in the Seventh Circuit have interpreted Rule 34 as containing an implicit waiver provision to parallel Rule 33(b)(4). *See, e.g., Laborers' Pension Fund v. Midwest Brickpaving, Inc.*, 2020 WL 9607993, at *2 (N.D. Ill. 2020); *Zambrano v. Sparkplug Cap., LLC*, 2020 WL 1847396, at *1 (N.D. Ill. 2020); *Bresnahan v. City of Chicago*, 2020 WL 4336069, at *4 (N.D. Ill. 2020); *Woods v. Cook County*, 2014 WL 7261277, at *2 (N.D. Ill. 2014)*; Martinez v. Cook County*, 2012 WL 6186601, at *3 (N.D. Ill. 2012). Moreover, if it is true that Experian's document collection might cost more than paying plaintiff's settlement demand – Experian provides no evidence that it would – so what? Discovery is always costly and mostly awful, and avoiding the ordeal very often provides the impetus to settle a case. But, "amount in controversy" is not the only consideration that falls under the heading of proportionality in Fed.R.Civ.P. 26(b)(1). There is also "the importance of the issues at stake in the action." Those little three-digit credit scores Experian is in business to handle have a disproportionate effect on a peoples' lives. And what about "the parties' relative access to relevant information"?

That leaves Experian's objection that the documents are privileged. Under Fed. R. Civ. P. 26(b)(5):

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (I) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Experian's objection came nowhere close to meeting these requirements. It simply said: [the] information [is] protected by the attorney-client privilege and work product doctrines." No

8

description and no explanation of why documents relating to scrub procedures – ordinary course of business type of documents, *see, e.g., Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4*, LLC, 334 F.R.D. 149, 158 (N.D. Ill. 2020)(collecting cases)[1] – are privileged. That's the type of rote, "boilerplate" objection that courts unanimously find tantamount to making no objection at all. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015)(court did not abuse its discretion in deeming facts admitted where plaintiff "provided only boilerplate objections, such as 'relevance' and 'vague and ambiguous.' "); *Extended Care Clinical v. Scottsdale Ins.*, 2021 WL 2894163, at *2 (N.D. Ill. 2021)(collecting cases); *Zambrano v. Sparkplug Capital, LLC*, 2020 WL 1847396, at *1 (N.D. Ill. 2020).

In order to maintain a claim of privilege, parties must, of course, produce a privilege log. *Pryor v. Target Corp.*, 2020 WL 6149569, at *2 (N.D. Ill. 2020); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013). Tardiness and failure to comply with Fed.R.Civ.P. 26(b)(5) can, in many circumstances, be found to constitute a waiver of the privilege as to the unlogged documents. *See, e.g., Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005) (" 'To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.'")(quoting Rule 26(b)(5) Advisory Committee's note (1993 Amendments));*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017)("Continual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad

---

[1] In this vein, plaintiff raises the very valid question of how, if documents like this may automatically be cloaked with the privilege, a plaintiff can hope to prove negligence or wilfulness in an FCRA case or, for that matter, other federal regulatory statute cases?

faith."); *S.E.C. v. Yorkville Advisors LLC*, 300 F.R.D. 152, 167 (S.D.N.Y. 2014); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, 2007 WL 1521117 (S.D.N.Y. 2007); *Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 160 (N.D. Ill. 2020)("So, the privilege log was not only late, it didn't claim Exhibit 5 was privileged. The claims regarding Exhibit 5 being protected by both the attorney client privilege and the work product doctrine, then, are brand new and, given the foregoing history, have been waived."); *Baxter International, Inc. v. Becton, Dickinson and Company*, 2019 WL 6258490, at *12 n. 13 (N.D. Ill. 2019) (forfeiture of work product protection where protection was not asserted in privilege log); *Smith v. Bd. of Education of City of Chicago*, 2019 WL 2525890, at *4 (N.D. Ill. 2019)(waiver of work product protection where claim not asserted in privilege log); *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 631 (N.D. Ill. 2016)("Arguably, they waived their claim of privilege as to these unidentified documents then and there."); *Rao v. Bd. of Trustees of the Univ. of Illinois*, 2016 WL 6124436, at *7 (N.D. Ill. 2016)("A timely and adequate privilege log is required by the federal rules, and the failure to serve an adequate and timely privilege log may result in a waiver of any protection from discovery.").

Experian asserts a novel argument as why it did not have to comply with the rules and principles. It claims that, because it also generally objected on the grounds of relevance, that meant it did not have to comply with Fed.R.Civ.P. 26(b)(5) then and there. As Experian would have it:

> If this Court determines that any of the documents sought are within the allowable scope of discovery, Experian will collect those documents, conduct a privilege review, and produce all non–privileged documents.

[Dkt. #30, at 12-13]. At least Experian is true to its word; in its objection, too, it stated in no uncertain terms that it would not even look for any documents, let alone go through them to see if

them might be privileged. *See* Experian's Response to No. 24 ("Based on the foregoing objections, Experian will not search for . . . documents in response to this Request."). Experian is banking on a reading of Rule 26(b)(5) which says a party only has to describe documents when it "withholds information otherwise discoverable . . . ." Experian said the information wasn't relevant, so it wasn't "otherwise discoverable." It is an argument that in practice would needlessly extend every discovery dispute and require multiple trips to court in every case; first to get a relevancy ruling and then, if necessary, to get a privilege ruling. And given the manner in which relevance objections are routinely lodged – generally without explanation or support – this would be necessary in almost every case.

We have it on the highest authority that "[t]he soundness of a conclusion may not infrequently be tested by its consequences," Posner, Cardozo: A Study in Reputation, 118 (1990), and an argument may be "scotched" where its acceptance would produce "outlandish consequences." *United States v. Cinergy Corp*., 458 F.3d 705, 709 (7th Cir. 2006). *See also Superior Graphite Co. v. Campos*, 2020 WL 5210841, at *6 (N.D. Ill. 2020). Given current case loads not only in this district but throughout the country, no court has time to bifurcate virtually every discovery dispute into multiple rounds of briefing on individual objections – first relevance, proportionality, burden, privilege – to name but a few – along with analysis, research and writing of opinions, the Federal Rules of Civil Procedure do not support such an approach. *See* Rule 1, Federal Rules of Civil Procedure.

Not surprisingly it appears that no court in this district – or any other district – has ever cited *Schanfield v. Sojitz*, 258 F.R.D. 211 (S.D.N.Y. 2009) for the proposition that if a party objected on the grounds of relevance, it may also later object on the grounds of privilege without ever having reviewed the documents claimed to be privileged. Indeed, such an extravagant reading of that case

11

is contrary to virtually ever case in this country that has discussed – and uniformly rejected – "blanket claims" of privilege. *See, e.g., United States v. Insurance Consultants of Knox, Inc.*, 187 F.3d 755, 760 (7th Cir. 1990); *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992); *Hollyfield v. United States*, 909 F.2d 201, 204 (7th Cir. 1999). Thus, a claim of privilege without a prior review of that which is claimed to be privileged is, at odds with all of the privilege cases and with the basic concept of a claim of privilege. And indeed, any attempt by a judge to make a determination of privilege without a sound factual foundation "amounts to nothing more than a waste of judicial time." *Hollyfield, supra,* 909 F.2d at 204. A privilege, as all the courts have held, can only be assessed after a document by document review. The approach suggested by the defendant ignores elementary principles of privilege and, if accepted, would allow a privilege claim in the absence of any review of the documents claimed to be privileged. That concept is contrary to the basic theory underlying attorney-client privilege claims.

Properly read, all the court in *Schanfield* did – and it did it in a footnote – was to reject a party's claim that its opponent, in addition to producing a privilege log compliant with Rule 26(b)(5), also had to produce a log of documents it was withholding based on relevance. 258 F.R.D. at 213 n.2. That would be a needless waste of judicial resources and a disservice to litigants in other cases waiting in the queue whose attorneys have made good faith assertions of the privilege *after* a review of responsive documents. *See Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990)("The interests of justice go beyond the interests of the parties to the particular suit; ... delay in resolving a suit may harm other litigants by making them wait longer in the court queue."). Moreover, it is a waste of the public funds that are subsidizing the resolution of all the disputes brought to court. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir.

12

2015)("[W]hy should a court supply a subsidized dispute-resolution service [for uneccesary disputes]. . . when other litigants, who do need the court's aid, are waiting in a queue?").

Experian is represented by one of the most significant law firms in the Nation and thus, contrary to Experian's thesis, I do not think it was inappropriate to require a review of documents in advance of any claim of privilege. As we have shown, that is what is required by every court in the county. As noted, cases have held, with unanimity, that there can be no claim of privilege in the abstract; and there must be a document-by-document examination of that which is claimed to be privileged or there can be no valid claim of privilege. And no case of which I am aware supports the notion that the attorney-client privilege can be claimed in the abstract without any review of the documents to which the privilege is claimed to apply. The contrary argument simply ignores the hundreds of cases that unanimously hold that a claim of privilege requires a document-by-document examination *before* it can be advanced. In addition to the cases cited above, *see United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).

But Experian's position has more serious problems. It asserts that if the court rules the documents at issue are relevant, it will then – only then – "collect those documents, [and] conduct a privilege review." [Dkt. #30, at 12]. In other words, according to Experian, it has yet to review the responsive documents. If Experian hasn't gone over the documents, how could it claim they are privileged in its objections to the plaintiff's document request back in July and, more importantly, how can it claim the are privileged in a brief filed in federal district court? The only answer is that those claims have been made in bad faith and, of course, cannot be upheld. This is not a case where Experian is "zealously" protect[ing] documents believed, in good faith, to be within the scope of the privilege," *Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867,

13

878–79 (7th Cir. 2005), or involving a "minor procedural violation [with] a good faith attempt at compliance." *Ritacca v. Abbott Lab'ys*, 203 F.R.D. 332, 335 (N.D. Ill. 2001). Quite the contrary. Experian tells the court it has not looked at or even searched for or the documents it claims are privileged.

Like other courts in the country, this court has often been faced with issues involving tardy privilege logs, inadequate privilege logs and no privilege logs. *See, e.g., Rossman v. EN Eng'g, LLC*, 335 F.R.D. 171, 173 (N.D. Ill. 2020); *Motorola Sols., Inc. v. Hytera Commc'ns Corp*, 2018 WL 1281393, at *1 (N.D. Ill. 2018);*United States ex rel. McGee v. IBM Corp*., 2017 WL 1232616, at *2 (N.D. Ill. 2017); *Slaven v. Great Am. Ins. Co.*, 2014 WL 4470723, at *2 (N.D. Ill. 2014). Abuse of the privilege has occurred too often, and the mistaken attitude that it may be asserted cavalierly is far too common. Indeed, the court has even witnessed attorneys claiming blank pages are privileged. The problem arises so frequently that there is an argument to be made for a simple, automatic application of a waiver rule: where there is no privilege log, a claim of privilege is improper, per se. But, given the hoary nature of the attorney-client privilege, courts have been hesitant to find such waivers as readily as they do elsewhere, however poorly a privilege log has been put together. *See, e.g., Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 623 (7th Cir. 2010); *Belcastro v. United Airlines, Inc*., 2019 WL 1651709, at *5 (N.D. Ill. 2019)(collecting cases); *Monco v. Zoltek Corp*., 317 F. Supp. 3d 995, 1000 (N.D. Ill. 2018)(collecting cases).

But asserting that documents are privileged without having reviewed them is another matter altogether. It is, as noted, an assertion that can only be said to have been made wilfully or in bad faith. *See Am. Nat. Bank*, 406 F.3d at 867, 877-78. As such, the circumstances here – no privilege log, and a blanket claim of privilege as to a group of documents counsel admits it has not yet

14

reviewed – warrant a finding that Experian has waived its privilege as to the emails at issue.[2]

Accordingly, this portion of plaintiff's motion is granted as well.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 11-15-21

---

[2] Needless to say, even if Experian *had* gone through the documents at issue before lodging its objection and filing its brief, the type of blanket claim it has made would still be unacceptable. As noted, blanket claims of privilege are unacceptable. *See supra* at 12-14; *Shaffer v. American Medical Assn.,* 62 F.3d 439, 446 (7th Cir. 2011).